IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JERRY BRASFIELD                                                                          PLAINTIFF

v.                                          Case No. 4:21-cv-00918 KGB

CITY OF PINE BLUFF, ARKANSAS,
and SHIRLEY WASHINGTON,
individually and in her official capacity                                    DEFENDANTS

<u>OPINION AND ORDER</u>

Before the Court is defendants City of Pine Bluff, Arkansas ("City"), and Mayor Shirley Washington's ("Mayor Washington") motion for summary judgment (Dkt. No. 18). Plaintiff Jerry Brasfield has filed a response, and defendants have filed a reply (Dkt. Nos. 23; 26).

Mr. Brasfield brings this action for monetary damages pursuant to 42 U.S.C. § 1983 alleging that the City, at the direction of Mayor Washington, demolished his real property in violation of his rights under the Due Process Clause of the Fifth Amendment, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution (Dkt. No. 1, ¶¶ 1, 18). Mr. Brasfield sues Mayor Washington in both her individual and official capacities (*Id.*, ¶ 13). Defendants deny Mr. Brasfield's allegations and move for summary judgment on all claims (Dkt. No. 18). For the following reasons, the Court grants defendants' motion for summary judgment.

I.      **Factual Background**

On July 30, 2014, Pine Bluff Department of Inspection & Zoning ("Code Enforcement") inspector Rodrick Carroll ("Inspector Carroll") sent a "Notice of Property Violation," Case No. 2014-00002461, by certified mail, return receipt requested to Esther Louise Duncan, the owner of the subject property located at 2508 W. 26th Avenue, Pine Bluff, Arkansas (Dkt. No. 24, ¶ 1). A

"Housing Inspection Report" for Case No. 2014-00002461 was attached to the Notice of Property Violation (*Id.*). The Notice of Property Violation identifies the property as "Parcel: 930-30882-000; Lot(s) 30, 31, 32, and 33; Legal: LOTS 30, 31, 32, & 33; ADDITION: HOME ADDITION." (*Id.*, ¶ 2). The Notice of Property Violation deemed the code violations "Repairable," and the Housing Inspection Report identified the major and minor code violations observed on the property that required repairs (*Id.*, ¶ 3). Further, the Housing Inspection Report noted that Inspector Carroll still needed to inspect the inside of the structure to complete the assessment (*Id.*).

The Notice of Property Violation explained the property owner's responsibilities to correct the violations identified on the Housing Inspection Report, the consequences for failure to comply, and the appeal process (*Id.*, ¶ 4). The Notice of Property Violation was delivered, and the certified mail receipt was signed for on August 6, 2014 (*Id.*, ¶ 5).

On November 3, 2014, Code Enforcement sent a second document, entitled "FINAL COUNCIL NOTICE – CONDEMNATION" ("Final Council Notice") to Ms. Duncan via certified mail, return receipt requested (*Id.*, ¶ 6). The attached certified mail receipt reflects that the document was delivered on November 13, 2014 (*Id.*). The Final Council Notice informed Ms. Duncan that the Pine Bluff City Council would hold a meeting on December 1, 2014, in which it would vote on a "condemnation resolution" that, if passed, would "condemn[] the structure" on the property located at 2508 W. 26th Avenue , "Legal: LOTS 30, 31, 32, & 33; Lot(s) 30, 31, 32, & 33; Block: Addition: HOME ADD; Parcel: 930-30882-000" and order its demolition and removal from the property (*Id.*, ¶ 7). The Final Council Notice outlined the procedure to request an extension of time to make the previously ordered repairs from the planning and development committee prior to the City Council's vote at the December 1, 2014, meeting (*Id.*, ¶ 8). The Final

Council Notice was delivered, and the certified mail receipt was signed for on November 13, 2014 (*Id.*, ¶ 9).

In its regularly scheduled meeting on December 1, 2014, the date and time of which had been provided to Ms. Duncan in the Final Council Notice, the City Council heard "RESOLUTION #3776 A RESOLUTION DECLARING CERTAIN HOUSES, BUILDINGS AND/OR STRUCTURES AS NUISANCES AND ORDERING THEIR ABATEMENT" ("Resolution #3776") (*Id.*, ¶ 10). Section 3 of Resolution #3776 listed parcel no. 930-30882-000, lots 30, 31, 32, and 33 of the home addition, location 2508 W. 26th Avenue, as one of the properties included in the proposed nuisance abatement (*Id.*, ¶ 11).

After discussion and amendment, the City Council approved Resolution #3776, ordering in part:

> NOW THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF PINE BLUFF, ARKANSAS;
>
> SECTION 1: That the owners of record listed in section 3 are hereby ordered to raze and remove the dilapidated, unsightly and unsafe structure located on the foresaid real property. Said demolition work shall be commenced within Ten (10) days or completed within thirty (30) days of the approval and passage of this resolution.
>
> SECTION 2: If the aforesaid work is not commenced within ten (10) days or completed within thirty (30) days, the Inspection Department for Pine Bluff is hereby directed to cause the aforesaid structure to be razed and removed and the City of Pine Bluff shall have a lien upon the aforesaid property for costs incurred.

(*Id.*, ¶ 12).

The structure on the property located at 2508 W. 26th Avenue was ordered to be "raze[d] and remove[d]" by the property owner and "[s]aid demolition work shall be commenced within ten (10) days or completed within thirty (30) days from the date of the approval and passage of

this resolution," *i.e.*, by December 31, 2014 (*Id.*, ¶ 13).   On January 15, 2015, at 2:41 p.m., Resolution #3776 was recorded with the Jefferson County Circuit Clerk (*Id.*, ¶ 14).

On April 15, 2015, a "residential add/alt/convert" permit was issued to James Duncan of Duncan Home Improvement, Co. for the property located at 2508 W. 26th Avenue.  The building permit expired on August 23, 2015 (*Id.*, ¶ 15).

On July 10, 2017, James D. Duncan and Tanya L. Duncan, grantors, executed a warranty deed to Jerry Brasfield, Jr. ("Plaintiff"), grantee, wherein Mr. and Ms. Duncan sold Plaintiff ten properties in total (*Id.*, ¶ 16).   One of the ten identified properties conveyed by the Duncans' warranty deed, identified as "Tract III," is described as "Lots Thirty (30), Thirty-One (31), Thirty-Two (32) & Thirty-Three (33) of Homes Addition to the City of Pine Bluff, Arkansas." (*Id.*, ¶ 17).

The warranty deed states, in pertinent part:  "GRANTORS covenant with GRANTEE to forever warrant and defend the title to the property against all claims except for prior conveyances or reservations of oil, gas or mineral interests, or for easements, covenants, reservations, or restrictions appearing of record." (*Id.*, ¶ 18).   The warranty deed was filed with the Jefferson County Circuit Clerk on July 10, 2017 (*Id.*, ¶ 19).   Mr. Brasfield's purchase of the ten properties identified in the warranty deed was subject to a mortgage in the amount of $69,000.00 through Relyance Bank, N.A. (*Id.*, ¶ 20).   The mortgage was filed with the Jefferson County Circuit Clerk on July 10, 2017 (*Id.*, ¶ 21).

When Mr. Brasfield purchased the properties identified in the warranty deed, he secured an owner's policy of title insurance, policy number OX-12004306, with Old Republic National Title Insurance Company through Jefferson Title Co., LLC. (*Id.*, ¶ 22).   Mr. Brasfield's title insurance policy provided coverage for all of the purchased tracts of land identified in the warranty deed, subject to certain exemptions, included in two attachments:  Schedule A, which detailed the

name of the insured and the legal descriptions for all ten properties included in the policy; and Schedule B, which detailed all of the "EXEMPTIONS FROM COVERAGE." (*Id.*, ¶ 23). Exhibit A to Schedule A of the policy identified Tract III as "Lots Thirty (30), Thirty-One (31), Thirty-Two (32) & Thirty-Three (33) of Homes Addition to the City of Pine Bluff, Arkansas." (*Id.*, ¶ 24).

Mr. Brasfield's title insurance policy states the "Covered Risks" were subject to the exclusions from coverage and the exceptions from coverage contained in "Schedule B" of the policy (*Id.*, ¶ 25). Schedule B, "EXCEPTIONS FROM COVERAGE," states: "This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of: . . ." and lists 19 exceptions from coverage (*Id.*, ¶ 26). Exception number 14 identifies: "Resolution #3776 A Resolution Declaring Certain Houses, Buildings and/or Structures as Nuisances and Ordering Their Abatement recorded January 15, 2015 in Deed book 951 at page 724 in the Jefferson County Circuit Clerk's Office. (Tract III)." (*Id.*, ¶ 27).

Mr. Brasfield signed an "Acknowledgement of Receipt" which stated, in pertinent part, "I/WE hereby acknowledge receipt of a copy of the attached Commitment for Title Insurance, plat and bill of assurance, if any, and a copy of the Privacy Notice on the date indicated below. I/WE acknowledge as correct the coverages contained herein, and accept the contents of said Commitment, specifically the exceptions to title." (*Id.*, ¶ 28). Mr. Brasfield signed and initialed the Owner's Policy of Title Insurance on July 10, 2017, in numerous places throughout the document, indicating that he had read the policy and understood its contents (*Id.*, ¶ 29).

Defendants allege that on March 20, 2018, the City published a legal notice in the *Pine Bluff Commercial*, which read:

> PINE BLUFF POLICE DEPARTMENT Quality of Life Division Notice of Violation of Pine Bluff Housing Code
> The below listed owners of record were notified of a hearing before the City Council in the Council Chambers, 200 E. 8th, to determine whether to raze and

> remove structure(s) as public nuisances.  Unless the owner(s) contact this office within thirty (30) days from the date of this publication, with just cause for delay, the structures listed below will be removed without further notice.
>
> Further information concerning the violation and the owner action required may be obtained from the City of Pine Bluff, Quality of Life Division, 200 E. 8th Avenue, Room 103 phone number (870) 730-2021.

(*Id.*, ¶ 30).  Mr. Brasfield denies this, but he cites no record evidence in support of his denial and provides no explanation for his denial (*Id.*).

Defendants allege that the first property identified in this legal notice read:  "OWNER: DUNCAN, ESTHER LOUISE (LE) AND ALL OTHER PERSONS WHO CLAIM INTEREST; PARCEL #:930-30882-000, LOCATION: 2508 W. 26TH DATE OF RESOLUTION: 12/1/14; RESOLUTION #3776" (*Id.*, ¶ 31).  Mr. Brasfield denies this statement on the grounds that he was the owner of the property since July 10, 2017, not Esther Louise Duncan (*Id.*).  It is unclear whether Mr. Brasfield also denies the existence of the legal notice.  If so, he cites no record evidence in support of his denial and provides no grounds for the denial (*Id.*).

On August 13, 2018, the Pine Bluff City Clerk's office accepted bids on behalf of the Pine Bluff Urban Renewal Agency ("URA") for the demolition of five structures, including the structure on the subject property located at 2508 W. 26th Avenue (*Id.*, ¶ 32).  On August 30, 2018, Robert Knott of Knott, Inc., applied for and purchased three building permits for demolition, including one for the demolition of the structure on the property located at 2508 W. 26th Avenue (*Id.*, ¶ 33).

On September 13, 2018, URA Director Maurice Taggart emailed Code Enforcement Office Manager Kristy Rice and explained that the structure on the property located at 2508 W. 26th Avenue had been prepared for demolition and was scheduled to be demolished the next day (*Id.*, ¶ 34).  Mr. Taggart had discovered, however, that the property was two blocks outside of the URA zone and that funding for its demolition could not come out of URA's funds (*Id.*).  Mr. Taggart

requested approval from Mayor Washington for the demolition expense to be paid for through the City's Code Enforcement budget (*Id.*). Mayor Washington approved the request for the demolition expense related to the structure on the property located at 2508 W. 26th Avenue to be paid for by the Code Enforcement budget on September 14, 2018 (*Id.*, ¶ 35).

On or about October 9, 2018, the structure on the property located at 2508 W. 26th Avenue was demolished in accordance with Resolution #3776 (*Id.*, ¶ 36).

Defendants allege that, while Mr. Brasfield has claimed that the City and Mayor Washington maintained a policy, practice, custom, or procedure that allowed Code Enforcement to demolish citizens' property without proper notice, Mr. Brasfield has failed to identify any such policy and failed to describe any custom or practice (*Id.*, ¶¶ 37, 38). In response to an interrogatory sent by defendants to Mr. Brasfield requesting an explanation of the City policy, practice, custom, or procedure that Mr. Brasfield believes violated his rights, Mr. Brasfield responded only that "Mayor Shirley Bailey [sic] violated 18 U.S.C. § 242; 18 U.S.C. § 1982, by authorizing his property to be taken without just compensation." (*Id.*, ¶ 37*)*. In his response to defendants' statement of facts, Mr. Brasfield responds to the allegation that he has not presented any evidence of a City policy, practice, custom, or procedure that allowed Code Enforcement to demolish citizens' property without proper notice by alleging that "[t]he Defendant did not notify the Plaintiff of the demolition when they had actual notice of the change in ownership of the property that occurred in 2017." (*Id.*). It is unclear to the Court how this is responsive to defendants' allegations that Mr. Brasfield has presented no evidence of an unconstitutional City policy, practice, custom, or procedure.

In response to an interrogatory sent by defendants to Mr. Brasfield requesting an explanation of the policy, practice, custom, or procedure maintained by Mayor Washington that

Mr. Brasfield believes violated his rights, Mr. Brasfield responded that "Mayor Washington authorized the property of the Plaintiff to be demolished without just compensation even after it was documented that the property was being remodeled after a permit had been issued by the City of Pine Bluff, Arkansas." (*Id.*, ¶ 38).   Mr. Brasfield alleges that the custom and practice was allowing the code enforcer to remove arbitrarily names from the demolition list (*Id.*).   He alleges that Mr. Knott, who received the City demolition contract, noticed that the property in question had new building materials in it and reviewed the structure with a representative of Code Enforcement because, in Mr. Knott's opinion, it appeared that someone was working on the house and that it would have been feasible to make it livable (Dkt. Nos. 23-1, at 4; 23-2, ¶¶ 5-8).   Mr. Brasfield further alleges that Mr. Knott received a call from a representative of the City telling him to go ahead with the demolition anyway, but that a different house which was slated for demolition and appeared to be under construction was removed from the list and not demolished (Dkt. Nos. 23-1, at 4; 23-2, ¶ 12).[1]

Mr. Brasfield alleges that the City and Mayor Washington failed to train properly and supervise their Code Enforcement officers resulting in a constitutional violation (Dkt. No. 24, ¶ 39).   When asked by interrogatory to identify how the alleged failure to train Code Enforcement officers violated his rights, Mr. Brasfield responded, "[t]he Code Enforcement Officer was shown that the property was being remodeled[,] and he saw that a permit was on the house issued by the City of Pine Bluff to permit the property to be remodeled[,] and the person that was performing the demolition told him that the property should not be demolished, but he proceeded indicating that he did not have the proper training or skills to determine if the property was creating a hazard."

---

[1] Defendants object to Mr. Knott's affidavit as including irrelevant information and pursuant to Federal Rule of Civil Procedure 56(c)(2) as not made on personal knowledge and not setting out facts that would be admissible in evidence (Dkt. No. 26, at 2-3 n.1).

(*Id.*).  In Mr. Brasfield's response to defendants' statement of undisputed facts, he adds the allegation that "[t]here was no standard by which properties would be removed from the demolition list which makes the procedure arbitrary and capricious as the Plaintiff [sic] and any other citizen in Pine Bluff, Arkansas." (*Id.*).

On October 8, 2021, Mr. Brasfield filed suit against the City and Mayor Washington, alleging that the demolition violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Dkt. No. 1, ¶¶ 1, 13, 15, 17, 18, 19, 20). Defendants now move for summary judgment (Dkt. No. 18).

## II.    Standards

### A.    Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to the entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable fact finder to return a verdict for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citing *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323; *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019).  The burden then shifts

to the nonmoving party to establish that there is a genuine issue to be determined at trial. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586-87). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-89 (1970)).

### B.    Qualified Immunity Standard

The Court now turns to Mr. Brasfield's claims against Mayor Washington. Mr. Brasfield sues Mayor Washington in her official and individual capacity (Dkt. No. 1, ¶ 7). Mayor Washington in her individual capacity may be protected by qualified immunity. "Qualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A two-step inquiry determines whether qualified immunity should be granted: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.*

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in

question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citation omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). *See also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[Qualified immunity] provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

### III.   Analysis

#### A.   Underlying Constitutional Claims

Mr. Brasfield asserts constitutional claims under 42 U.S.C § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution (Dkt. No. 1, ¶¶ 1, 13, 15, 17, 18, 19, 20).  He repeatedly refers to the violation of his "rights under the Due Process Clause of the Fifth Amendment." (*Id.*, ¶¶ 1, 13, 15, 17).  He refers to Fourteenth Amendment rights without specifying to which ones he is referring (*Id.*, ¶¶ 18, 20).  The Court examines each of his claims in turn.

#### 1.   Fourth Amendment

Mr. Brasfield's complaint twice mentions the Fourth Amendment but does not explain the way in which he believes his Fourth Amendment rights were violated, given the facts he alleges and the record evidence before the Court at this stage of the proceeding (*Id.*, ¶¶ 18, 20).  His response to defendants' motion for summary judgment does not mention the Fourth Amendment (Dkt. No. 23).  "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009).  Defendants in their brief in support of summary judgment address the Fourth Amendment, but Mr. Brasfield does not respond to that argument (Dkt. Nos. 20, at 16; 23).  The Court considers

this basis of Mr. Brasfield's Fourth Amendment claim abandoned, given his failure to address it at the motion for summary judgment stage.

Even if the Court considers the merits of a Fourth Amendment claim in this context, the Court determines that defendants are entitled to summary judgment on this claim.  Although Mr. Brasfield does not cite it in his response to the motion for summary judgment, in *Soldal v. Cook County, Illinois,* the Supreme Court held that a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property."  506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)).  According to *Soldal,* in determining whether a government seizure violates the Fourth Amendment, the seizure must be examined for its overall reasonableness.  506 U.S. at 71.  The analysis must be based upon a careful balancing of governmental and private interests.  *Soldal,* 506 U.S. at 71.

The Eighth Circuit Court of Appeals has determined that it is improper to collapse the Fourth Amendment reasonableness standard into the Fourteenth Amendment notice and hearing requirements in all cases and that, instead, the Supreme Court's ruling in *Soldal* requires more. *Samuels v. Meriwether*, 94 F.3d 1163, 1167–68 (8th Cir. 1996).  The Eighth Circuit has determined that, when a Fourth Amendment claim is brought, courts should conduct an independent review of the seizure for reasonableness in addition to any analysis regarding procedural due process, acknowledging that many seizures carried out in accordance with procedural due process will undoubtedly survive Fourth Amendment review.  *Id.* (citing *Soldal*, 506 U.S. at 71).  The Eighth Circuit has determined that a seizure pursuant to a court order is reasonable under the Fourth Amendment, *see Coleman v. Watt,* 40 F.3d 255, 263 (8th Cir.1994) (examining impoundment of motor vehicle), and that a seizure pursuant to a City board condemnation hearing is reasonable under the balancing test mandated in *Soldal, see Hroch v. City of Omaha,* 4 F.3d 693, 696–97 (8th

Cir. 1993) (assessing the demolition of a building pursuant to City board condemnation).  These holdings suggest that an abatement carried out in accordance with procedural due process is reasonable in the absence of any factors that outweigh governmental interests.  In the present case, based on the record evidence with all reasonable inferences construed in favor of Mr. Brasfield, defendants acted pursuant to a noticed hearing and a resolution effectuating municipal ordinances. Mr. Brasfield has failed to raise any factual issues that advance a valid claim of unreasonable behavior on the part of defendants.

To the extent Mr. Brasfield contends he personally should have received notice from defendants, the Court rejects that assertion.  At the time the City Council passed Resolution #3776 on December 1, 2014, the listed owner of the property located at 2508 W. 26th. Ave. in Pine Bluff, Arkansas, including the structure located thereon, was Esther Duncan (Dkt. No. 19-3, at 2).  On January 15, 2015, at 2:41 p.m., Resolution #3776 was recorded with the Jefferson County Circuit Clerk (Dkt. No. 24, ¶ 14).  Mr. Brasfield did not possess a protected property interest at the time the property was determined to be a nuisance and placed on the demolition list.

According to defendants, the International Property Maintenance Code which is the controlling body of regulations for residential property structures in the City, provides as follows:

> **111.6 Transfer of ownership**.  It shall be unlawful for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served to sell, transfer, mortgage, lease or otherwise dispose of such dwelling unit or structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner or the owner's authorized agent shall first furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the code official and shall furnish to the code official a signed and notarized statement from the grantee, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.

(Dkt. No. 26, at 4 (quoting and citing SECTION 111 UNSAFE STRUCTURES AND EQUIPMENT, IPRMT21CD § 111. 2)).  Mr. Brasfield has come forward with no record evidence to demonstrate that the owners who conveyed the property at 2508 W. 26th Ave. in Pine Bluff, Arkansas, to Mr. Brasfield furnished the required documentation to him.

Regardless, when Mr. Brasfield purchased this property, along with others, the warranty deed was filed with the Jefferson County Circuit Clerk on July 10, 2017 (Dkt. No. 24, ¶ 19).  His purchase was subject to a mortgage that also was filed with the Jefferson County Circuit Clerk on July 10, 2017 (*Id.*, ¶¶ 20–21).  Mr. Brasfield secured at that time an owner's policy of title insurance that specifically put him on notice of "Resolution #3776 A Resolution Declaring Certain Houses, Buildings and/or Structures as Nuisances and Ordering Their Abatement recorded January 15, 2015 in Deed book 951 at page 724 in the Jefferson County Circuit Clerk's Office. (Tract III)." (*Id.*, ¶¶ 22–27).  Mr. Brasfield signed an acknowledgment, and signed and initialed in numerous places the title insurance policy documents, indicating that he had read the policy and understood its contents (*Id.*, ¶¶ 28–29).

Moreover, there is record evidence that, on March 20, 2018, the City published a legal notice in the *Pine Bluff Commercial* again providing constructive notice to Mr. Brasfield; the Court deems this admitted because Mr. Brasfield cites no record evidence in support of his denial of this record evidence (*Id.*, ¶ 30).

For all of these reasons, the Court rejects any suggestion that a failure by defendants to provide Mr. Brasfield with personal notice, given the record evidence in this case, advances a valid claim of unreasonable behavior on the part of defendants.

To the extent Mr. Brasfield contends defendants waited too long to act upon the Resolution, the Court rejects that assertion.  Defendants are correct that there is no record evidence, and

defendants represent that there is no legal authority, that the City council's Resolution expires within a certain amount of time if the City does not effectuate demolition; that declares the City's right to demolish a structure properly placed on the demolition list expires if the demolition is not effectuated within a certain timeframe; or that the City council's Resolution or the City's right to demolish a structure properly placed on the demolition list terminates if the property is sold or otherwise transferred (Dkt. No. 26, at 5).  Mr. Brasfield does not present record evidence or legal authority to challenge defendants' assertions on these points.  Therefore, the Court rejects any suggestion that any alleged delay by defendants to demolish the structure advances a valid claim of unreasonable behavior on the part of defendants.

To the extent Mr. Brasfield asserts that "Mayor Washington authorized the property of the Plaintiff to be demolished without just compensation even after it was documented that the property was being remodeled after a permit had been issued by the City of Pine Bluff, Arkansas" (Dkt. No. 24, ¶ 38), the undisputed record evidence before the Court is that, on April 15, 2015, a "residential add/alt/convert" permit was issued to James Duncan of Duncan Home Improvement, Co. for the property located at 2508 W. 26th Avenue (*Id.*, ¶ 15).  The building permit expired on August 23, 2015 (*Id.*).  There is no record evidence of any other building permit being issued by the City for the property located at 2508 W. 26th Avenue during the relevant time period, and there is no record evidence of any building permit being issued to Mr. Brasfield.  These allegations do not advance a valid claim of unreasonable behavior on the part of defendants.

To the extent Mr. Brasfield contends defendants spared another property from demolition but not his, the Court rejects that assertion.  The Court acknowledges Mr. Brasfield's submission of the affidavit of Robert Knott (Dkt. No. 23-2).  Mr. Knott is a non-party, non-expert, non-City employee who performed the demolition of the structure located on Mr. Brasfield's property on

October 9, 2018.  Mr. Knott opines in his affidavit about the physical integrity of the property at the time of demolition, which testimony defendants object to as irrelevant.  Further, Mr. Knott through his affidavit attempts to introduce hearsay evidence about conversations that supposedly occurred between Mayor Washington and an unidentified "Code Enforcer" with whom Mr. Knott claims to have spoken at the time of the demolition.  Mr. Knott maintains that he contacted the City due to his concerns about Mr. Brasfield's property to be demolished, reviewed the structure with a representative of the City to get final approval to complete demolition, and was given final approval to complete demolition (Dkt. No. 23-2, at 1–2).  Mr. Knott never names any individual with the City with whom he contends he spoke.  Further, Mr. Knott contends without providing many if any details that another house on the same list as Mr. Brasfield's "was being worked on and the City of Pine Bluff removed it from the list to be demolished." (*Id.*).

Defendants object to portions of Mr. Knott's affidavit pursuant to Federal Rule of Civil Procedure 56(c)(2) as not made on personal knowledge and not setting out facts that would be admissible in evidence (Dkt. No. 26, at 2-3 n.1).  The Court grants defendants' objections to Mr. Knott's affidavit.  Regardless, even if the Court considers Mr. Knott's affidavit, the affidavit does not create a disputed genuine issue of material fact sufficient to defeat defendants' motion for summary judgment, given the undisputed record evidence even with all reasonable inferences drawn in favor of Mr. Brasfield.  Mr. Knott offers nothing more than the address of the other property he contends was being worked on and removed from the list to be demolished (*Id.*, at 2).  Neither Mr. Brasfield nor Mr. Knott present record evidence that the owner of that other property was situated similarly to Mr. Brasfield, given the City's procedures in effect for this process.  Mr. Knott's affidavit is not sufficient to advance a valid claim of unreasonable behavior on the part of defendants.

Even if Mr. Brasfield made a valid Fourth Amendment claim, to the extent that such claim is directed at Mayor Washington in her individual capacity, she is entitled to qualified immunity because Mr. Brasfield has not pointed the Court to any clearly established law on his purported Fourth Amendment claim.

Therefore, for all of these reasons, the Court grants defendants' motion for summary judgment on Mr. Brasfield's § 1983 claims based on the Fourth Amendment and dismisses with prejudice any § 1983 claims based on the Fourth Amendment that Mr. Brasfield may have asserted.

### 2.    Due Process Clause Of Fifth Amendment

The Due Process Clause of the Fifth Amendment applies to the federal government, not state governments.  *See, e.g., Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) ("The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and the Plaintiffs have not alleged that the federal government or a federal action deprived them of property.").  However, Mr. Brasfield also states in his complaint that "[d]efendants' action in having his property destroyed is tantamount to the taking of property without just compensation" and specifically references the Fifth Amendment Takings Clause in his response to defendants' motion for summary judgment (Dkt. Nos. 1., ¶ 19; 23-1, at 5).  The Court therefore construes Mr. Brasfield's references to the Fifth Amendment as an invocation of that amendment's Takings Clause and construes Mr. Brasfield's unexplained references to rights under the Fourteenth Amendment as invocations of that amendment's Due Process Clause (Dkt. No. 1, ¶¶ 18, 20).  Any claims Mr. Brasfield may have asserted for violation of the Due Process Clause of the Fifth Amendment are dismissed with prejudice, as Mr. Brasfield fails to allege federal action.

### 3.    Takings Clause Of Fifth Amendment

Mr. Brasfield alleges that his rights under the Fifth Amendment's Takings Clause were violated when the City demolished the structure at issue (Dkt. Nos. 1, ¶ 19; 23-1, at 5). The Fifth Amendment prohibits governments from taking private property "for public use without just compensation." U.S. Const. amend. V; *see generally Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897) (applying the Takings Clause to the states through the Fourteenth Amendment). Land use regulations that result in a permanent, physical invasion of private property amount to a taking within the meaning of the Takings Clause. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982).

However, because "'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,'" a city may regulate public nuisances without effecting a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (quoting *Mugler v. Kansas*, 123 U.S. 623, 665 (1887)). The parameters of Takings Clause protection are defined by "existing rules or understandings that stem from an independent source such as state law." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992). The "Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed" by these existing rules or understandings unless that regulation bars all economically productive or beneficial uses of the land. *Id.* *Compare Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 138 (1978) (holding that there was not a taking when the government designated a building as an historic landmark and prevented the owner from constructing a substantial expansion) *with Lucas*, 505 U.S. at 1019 (holding that there is a taking when a regulation denies all economically beneficial or productive use of the land).

Here, there is no competent record evidence that the City failed to follow the standard procedure proscribed by its municipal code regulating public nuisances when it condemned and

demolished the structure at issue (Dkt. No. 24, ¶ 12).  Demolishing a structure that the City found to be unsafe was in line with City regulations, did not render the property valueless, and therefore was not a taking requiring compensation.  *Lucas*, 505 U.S. at 1019.  The Court finds that Mr. Brasfield's rights under the Fifth Amendment Takings Clause were not violated.

For these reasons, the Court grants summary judgment in favor of defendants on Mr. Brasfield's Fifth Amendment Takings Clause claim.

### 4.    Due Process Clause Of Fourteenth Amendment

Mr. Brasfield also alleges that defendants violated his Fourteenth Amendment rights (Dkt. No. 1, ¶¶ 18, 20).  Mr. Brasfield's complaint does not clarify which part of the Fourteenth Amendment he alleges was violated (*Id.*).

The Fourteenth Amendment familiarly forbids a state entity to "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Amendment includes procedural and substantive components.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Where a property deprivation is alleged, both components require a plaintiff to establish a constitutionally protected property interest.  *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995).  Procedural due process safeguards against deprivations of property without sufficient process.  *In re Kemp*, 894 F.3d 900, 908 (8th Cir. 2018).  Substantive due process safeguards against deprivations resulting from government intrusion into fundamental rights or arbitrary or irrational government action.  *See United States v. Fortney*, 357 F. 3d 818, 821 n.4 (8th Cir. 2004).

For purposes of resolving the pending motion, the Court assumes that Mr. Brasfield had a protected property interest in the structure at issue and evaluates Mr. Brasfield's allegations as potential violations of procedural and substantive due process rights.

### a.    Fourteenth Amendment Procedural Due Process

The Court interprets Mr. Brasfield's invocation of the Fourteenth Amendment, together with the references in his complaint to Fifth Amendment due process and discussion in his response to plaintiff's motion for summary judgment of procedural due process without reference to a specific amendment, as a claim that his rights to procedural due process under the Fourteenth Amendment were violated (Dkt. No. 23-1, at 3-4).  Mr. Brasfield alleges that his due process rights were violated because the City provided him with insufficient notice and the opportunity to be heard before demolishing the structure at issue (*Id.*, at 3).[2]

The Due Process Clause constrains "governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577

---

[2]  The Court understands Mr. Brasfield to bring an as-applied challenge, based on his allegations, and does not understand Mr. Brasfield to bring a facial challenge to the City's procedures.  As-applied challenges are inherently narrow.  They arise when a law's application violates an individual's constitutional rights under the circumstances presented.  *See United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019).  The resulting remedy is likewise narrow, preventing enforcement of the law to the extent necessary to protect the particular challenger's rights but no further.  *See Brakebill v. Jaeger*, 932 F.3d 671, 678 (8th Cir. 2019).  An as-applied challenge cannot invalidate a law wholesale.  *See id.*  For that to occur, a winning facial challenge is required.  "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."  *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).  To prevail on such a claim, a challenger "must show that there is no set of circumstances under which the law[ ] would be valid."  *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  When a challenger makes this showing, then the constitutional defect renders the law completely invalid.  "Facial challenges are disfavored" in the light of this wide-sweeping result.  *Brakebill*, 932 F.3d at 677 (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-51 (2008)).

(1972).  If a court determines that a plaintiff did have a property interest that the government infringed upon, then due process protections are triggered.

In cases of demolition after the condemnation of a property, due process is satisfied when "a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body." *Samuels v. Meriwether*, 94 F.3d 1163, 1166–67 (8th Cir. 1996).  Due process does not require optimal notice, only notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950) (citing *Milliken v. Meyer*, 311 U.S. 457, 463  (1940)).  When a property owner has actual notice that the city has condemned a structure on the property owner's property, lack of other notice does not violate due process. *Hroch v. City of Omaha*, 4 F.3d 693, 696 (8th Cir. 1993).

Assuming for the purpose of argument that Mr. Brasfield had a protected property interest in the structure at issue, the City provided sufficient process before the demolition.  The City sent then-owner Ms. Duncan a notice of property violation explaining the property owner's responsibilities, the consequences of failure to comply, and the appeals process on July 30, 2014 (Dkt. No. 24, ¶¶ 1-4).  The City sent Ms. Duncan a final notice of condemnation on November 3, 2014 (*Id.*, ¶ 6).  This notice explained that there would be a City council hearing on December 1, 2014, to make a final decision about the condemnation (*Id.* ¶ 7).  In its regularly scheduled meeting on December 1, 2014, the date and time of which had been provided to Ms. Duncan in the Final Council Notice, the City Council hard and voted to approve Resolution #3776 (*Id.*, ¶¶ 10–12).

On January 15, 2015, Resolution #3776 providing for the demolition of the property at issue was recorded with the Jefferson County Circuit Clerk (*Id.*, ¶ 14).  This recorded resolution

gave Mr. Brasfield record notice of the encumbrance when he purchased the property by warranty deed on July 10, 2017.

Mr. Brasfield then received actual notice of the encumbrance when he signed his insurance policy's acknowledgement of receipt which explicitly exempted the property at issue here from coverage due to the encumbrance, citing with specificity the encumbrance (*Id.*, ¶ 28).

Based upon undisputed record evidence, the City published the legal notice in the *Pine Bluff Commercial* on March 20, 2018 (*Id.*, ¶¶ 28, 30).  The legal notice instructed any interested parties to contact the City within 30 days if they had just cause to delay the demolition (*Id.*, ¶ 31). Although Mr. Brasfield denies this, he cites no record evidence in support of this denial, and the Court determines that this published legal notice provided constructive notice.

There is no record evidence that at any point after receiving constructive notice in 2015 or 2018 or actual notice in 2017 that Mr. Brasfield informed anyone with the City that he was planning or attempting to renovate the structure on the property.  Undisputed record evidence demonstrates that Mayor Washington approved the request for the demolition of funds on September 14, 2018, well beyond the 30-day deadline published in the *Pine Bluff Commercial* on March 20, 2018 (*Id.*, ¶ 35).  There is no record evidence that Mayor Washington knew, or could have known, that approving the request for demolition expenses for a property that had properly been declared a nuisance and ordered abated would violate Mr. Brasfield's clearly established rights.

Mr. Brasfield argues that the building's prior owner was given a building permit the year after the property was placed on this list to be demolished and that the City should have conducted a second evaluation after issuing this permit (Dkt. No. 23-1, at 3).  Mr. Brasfield also argues that the City should have given him "specific notice" after he bought the property (*Id.*).  He argues that

he should have been entitled to a new hearing before the City council (*Id.*, at 4).  These are challenges to the sufficiency of the City's procedure, but the Due Process Clause does not guarantee maximum procedural protections or entitle Mr. Brasfield to the precise procedures he desires.  Moreover, the undisputed record evidence is that Mr. Brasfield through the recording with the Jefferson County Circuit Clerk of Resolution #3776 providing for the demolition of the property at issue and Mr. Brasfield's title insurance policy had actual notice that the City had condemned the structure on the property.  There also is record evidence that, on March 20, 2018, the City published a legal notice in the *Pine Bluff Commercial* again providing constructive notice to Mr. Brasfield.

Based on the record evidence before the Court with all reasonable inferences construed in favor of Mr. Brasfield as the non-moving party, the City provided notice and the opportunity for a hearing at the City council to the prior owner Ms. Duncan.  After purchasing the property, Mr. Brasfield had actual notice of this prior proceeding and the encumbrance on the property, and Mr. Brasfield had the opportunity to contact the City about its decision.  He did not do so.  Based on the undisputed record evidence, this notice was reasonably calculated to apprise Mr. Brasfield of the status of his property and to inform him of the opportunity to appear before the proper municipal body.  *Mullane*, 339 U.S. at 314; *Hroch*, 4 F.3d at 696; *Samuels*, 94 F.3d at 1166–67.  The Court determines, based on the undisputed record evidence with all reasonable inferences construed in favor of Mr. Brasfield, that no reasonable juror could conclude that these procedures failed to satisfy due process.[3]

---

[3]   Because Mr. Brasfield's as-applied procedural due process claim fails, the City's procedures are not "unconstitutional in all its applications."  *Bucklew*, 587 U.S. at 138.  For that reason, to the extent he intended to allege a facial challenge, Mr. Brasfield's facial challenge based on procedural due process allegations fail as well.

### b.    Fourteenth Amendment Substantive Due Process

Mr. Brasfield further argues that the decision to demolish the structure at issue was arbitrary because in another instance the code enforcer was shown that a house slated for demolition appeared to be under construction and was taken off the list (Dkt. No. 23-1, at 4).  It is not clear whether, through his allegations, Mr. Brasfield intends to bring a substantive due process claim.[4]  Regardless, the Court will analyze such a claim.

"[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Novotny v. Tripp County,* 664 F.3d 1173, 1178 (8th Cir. 2011) (alteration in original) (quoting *Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir. 1989)).  Substantive due process insulates constitutionally protected property interests and fundamental rights from government conduct that "shocks the conscience." *Gallagher v. Magner*, 619 F.3d 823, 840 (8th Cir. 2010) (citations and internal quotation marks omitted) (discussing constitutionally protected property interests); *Norris v. Engles*, 494 F.3d 634, 638 (8th Cir. 2007) (discussing fundamental rights).

The Eighth Circuit deploys two separate standards for facial and as-applied substantive due process challenges to property deprivations resulting from land-use regulations.  *See WMX Techs., Inc. v. Gasconade County*, 105 F.3d 1195, 1198 n.1 (8th Cir. 1997); *Bellino Fireworks, Inc. v. City of Ankeny*, 332 F. Supp. 3d 1071, 1095-96 (S.D. Iowa 2018).  For as-applied claims, a plaintiff

---

[4]  Mr. Brasfield's complaint does not use the phrase "equal protection," but to be clear, such a claim on the record evidence before the Court construing all reasonable inferences in favor of Mr. Brasfield would fail for the same reasons Mr. Brasfield's other claims fail.  *See Hodel v. Indiana,* 452 U.S. 314, 331–332 (1981) (holding that "social and economic legislation [like the one at issue here] that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate government purpose" and that "such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality.").

"must demonstrate the 'government action complained of is truly irrational, that is something more than. . . arbitrary, capricious, or in violation of state law.'" *Koscielski v. City of Minneapolis*, 435 F.3d 898, 902 (8th Cir. 2006) (ellipses in original) (quoting *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir. 1993)).  A valid facial challenge, meanwhile, requires a plaintiff to prove that the land-use regulation itself "is arbitrary, capricious and not rationally related to a legitimate public purpose." *WMX Techs., Inc.*, 105 F.3d at 1198-99 (citing *Pennell v. City of San Jose*, 485 U.S. 1, 11 (1988)).  Truly irrational government action "bear[s] no relationship whatever to the merits of the pending matter." *Lemke v. Cass County*, 846 F.2d 469, 472 (8th Cir. 1987) (en banc) (per curiam) (Arnold, J., concurring).

Mr. Brasfield has not raised a disputed issue of material fact with regard to a substantive due process claim – as-applied or facial.  The Court determines, based on the undisputed record evidence with all reasonable inferences construed in favor of Mr. Brasfield, that no reasonable juror could conclude that the City or its employees did anything conscience-shocking, outrageous, or irrational.

### B.     Claims Against Mayor Washington In Her Official Capacity And City

Mr. Brasfield brings municipal liability claims against the City and Mayor Washington in her official capacity.  Under § 1983, a plaintiff may sue a municipality and may sue a municipal official in his or her official capacity.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . [and] is not a suit against the official personally." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Where, as here, the municipal entity is also named as a defendant, the official capacity claims are redundant and properly dismissed.  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

Under 42 U.S.C. § 1983 a municipality may not be held vicariously liable for the unconstitutional acts of employees.  *Monell*, 436 U.S. at 694.  However, a municipality can be liable for the unconstitutional acts taken by an employee due to an officially promulgated policy, the decisions of a city official with final policy making authority, a custom or practice of constitutional violations, or deliberate indifference to inadequate training likely to result in a constitutional violation.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127(1988); *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).   Mr. Brasfield appears to allege that the City and Mayor Washington in her official capacity are liable for all four reasons (Dkt. No. 24, ¶¶ 37-39).

To establish municipal liability under § 1983, a plaintiff must show that a policy or custom of the municipality caused a violation of the plaintiff's constitutional rights.  A policy is an official policy or deliberate choice made by an official with final policymaking authority.  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  To establish a custom, the plaintiff must show: (1) a continuing, widespread, persistent pattern of unconstitutional misconduct by the entity's employees; (2) the entity's deliberate indifference to or tacit authorization of such conduct by policymaking officials after obtaining notice of the misconduct; and (3) an injury to the plaintiff caused by acts pursuant to the custom.  *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).  The custom must be the moving force behind the constitutional violation.  *Mettler*, 165 F.3d at 1204.

Without a constitutional violation by an employee, there can be no municipal liability.  *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018).  For the reasons explained, Mr. Brasfield fails to demonstrate an underlying constitutional violation by a City employee.  As a result, there can be no municipal liability, and defendants the City and Mayor Washington in her

official capacity are entitled to summary judgment in their favor on Mr. Brasfield's municipal liability claims.

**IV.      Conclusion**

For the foregoing reasons and having reviewed the entire record in the light most favorable to Mr. Brasfield, the Court finds that there are no genuine issues of material fact in dispute and that Mr. Brasfield cannot make out a claim for the violation of any constitutional right.  The Court grants defendants' motion for summary judgment and dismisses with prejudice Mr. Brasfield's claims.  His request for relief is denied.

It is so ordered this 30th day of September, 2024.

_____
Kristine G. Baker
Chief United States District Judge